[Civ. No. 18086.   First Dist., Div. Two.   Oct. 21, 1958.]

BRENDA FIELDS, a Minor, etc., et al., Plaintiffs; KAREN FIELDS, a Minor, etc., et al., Appellants, v. NAPA MILLING COMPANY (a Corporation) et al., Respondents.

*Assigned by Chairman of Judicial Council.

Russell F. King for Appellants.

Cresswell & Davis for Respondents.

MARTINELLI, J. pro tem.*—Plaintiff Opal Fields and her minor daughters, Brenda and Karen, through James Fields, their guardian *ad litem,* sought damages for personal injuries arising from a collision involving a truck owned by defendant Napa Milling Company and driven by its employee, defendant August Rossi. James Fields, in his individual capacity as husband and father, sought to recover medical expenses incurred as a result of the accident. Napa Milling and Warehouse Company filed a cross-complaint seeking to recover for damage to its truck.

A trial without a jury resulted in a judgment awarding $700 and costs to Brenda Fields, denying recovery to Karen Fields, and denying recovery to the remaining plaintiffs. Defendant Napa Milling and Warehouse Company was denied recovery upon its cross-complaint and was awarded its costs against all except Brenda Fields.

Plaintiffs Opal, Karen and James Fields appeal from the portions of the judgment denying them recovery and awarding costs to defendant.

The evidence shows that the accident occurred on Eastshore Boulevard (Highway 40) at its intersection with Fresno Avenue in Richmond, California. Eastshore is a through highway running in a general north and south direction and is 60 feet wide with four lanes divided by a "painted island" approximately 6 feet wide. On March 15, 1956, the date of the accident, the posted speed limits on Eastshore in the area of this intersection was 35 miles per hour. There was a stationary stop sign located on Fresno Avenue approximately 20 feet west of the west edge of the highway for the purpose of controlling traffic crossing the highway from west to east.

At about 2:30 p.m. on March 15, 1956, appellant Opal Fields, accompanied by her two daughters, drove east on Fresno and stopped at its intersection with Eastshore. She testified that the only traffic she observed was respondents' truck over two blocks away approaching from the right in the outer (east) lane at approximately 30 miles per hour. Appellant started across the intersection traveling at a speed of approximately 8 to 10 miles per hour and when she reached the middle of the highway her engine sputtered. At this time

---

*Assigned by Chairman of Judicial Council.

respondents' truck was approximately a block away and was traveling at the same speed, approximately 30 miles per hour. There was conflicting testimony as to whether appellants' automobile stopped in the center strip. She testified that there was "very little" change of speed. Rossi testified that appellants' car made a "hesitation stop" at the center strip. A witness to the collision, Mr. Jackson, testified that when respondents' truck was within 50 to 60 feet of the intersection, appellants' car stopped in the middle of the highway. The deposition of another witness to the accident, Elaine Fay McDaniel, indicated that appellant proceeded slowly across the intersection without stopping.

There was conflict also as to the location of the point of impact. The highway patrol officer who investigated the accident testified that the collision occurred at a point 4 feet east of the east edge of the traveled portion of Eastshore and 2 to 3 feet north of the center of Fresno Avenue. Jackson testified that the point of impact was on the paved portion of the highway in the east lane.

At the trial respondent Rossi testified that he was driving north on Eastshore Boulevard in the east lane at approximately 30 miles per hour. He stated that he first noticed appellants' car when it was approaching the center of the highway and at this time he was approximately 60 feet from the Fresno Avenue intersection. The car stopped in the center strip and then began to move again and Rossi applied his brakes. The witness had previously testified when his deposition was taken that he first saw appellants' car at the stop sign, and at this time he was approximately a block from the intersection. There were other inconsistencies between his testimony at the time of the deposition and at the trial.

The trial court found that the collision and injuries were proximately caused by the negligence of respondent Rossi and the contributory negligence of appellant Opal Fields. He found that Karen Fields did not sustain any compensable injuries and that compensable injuries were sustained by Brenda Fields.

Appellants contend that there was no substantial evidence to support a finding of contributory negligence or in other words there was no substantial evidence indicating that respondents' truck constituted an immediate hazard within the meaning of section 552 of the Vehicle Code.

Appellants recognize that the power of this court "begins and ends with a determination as to whether there

is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the [trier of fact]." (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].) They contend, however, that as a matter of law the evidence would not support a finding of contributory negligence.

In *McGuire* v. *San Diego Transit System*, 143 Cal.App.2d 509 [299 P.2d 905], the testimony of the driver of defendant's bus was to the effect that he stopped at the intersection and saw no traffic approaching from the north. He entered the highway and came to a rolling stop at the center island. At this point he observed a red truck approaching about 500 feet away at about 35-45 miles per hour. He saw no other vehicle and believing he had time to cross he accelerated the engine and was traveling at the rate of 5-10 miles per hour when he was struck by plaintiffs' automobile. On appeal from a judgment for plaintiffs, one of the contentions was that the evidence was not sufficient to show negligence on the part of the bus driver. The appellate court held that a jury might well have believed that both the red truck and plaintiffs' car were so close to the intersection as to constitute an immediate hazard. Assuming that the defendant had the right of way at the time of his original entry into the intersection, the court stated that the fact that the bus stopped in the center portion of the highway and then continued on in the face of oncoming traffic might well justify a finding of negligence of the bus driver. (*Cf. Smith* v. *Pellissier*, 134 Cal.App. 2d 562 [286 P.2d 66].)

In the instant case, accepting appellants' contention that it did not constitute negligence to enter the intersection, there was evidence that the car stopped in the center of the highway. Appellant Opal Fields testified that her engine "sputtered." The trial court could have decided that it was contributory negligence even though there was no "immediate hazard" when entering the intersection to continue across the highway knowing that the automobile engine was not functioning properly. The question of whether respondents' truck was an "immediate hazard" was a factual question and the evidence would support a finding that it was contributory negligence to enter the intersection. (*Lewis* v. *Doyle*, 149 Cal.App. 2d 176, 181 [307 P.2d 965].)

Cases are cited by appellants for the proposition that drivers crossing a through highway may reasonably misjudge the speed or distance of an approaching vehicle and the proxi-

mate cause of the accidents was the failure of the approaching driver to take reasonable preventive action. (*Van Cise* v. *Lencioni,* 106 Cal.App.2d, 341, 346 [235 P.2d 236]; *Shivers* v. *Van Loben Sels,* 109 Cal.App.2d 286, 289 [240 P.2d 635]; *Root* v. *Pacific Greyhound Lines,* 84 Cal.App.2d 135, 137 [190 P.2d 48]; *Stickel* v. *San Diego Elec. Ry. Co.,* 32 Cal.2d 157, 162 [195 P.2d 416].) These cases do not aid appellants as they hold only that the jury could have found that appellants' vehicles did not constitute an "immediate hazard."
"Whether a vehicle is or is not approaching so closely as to constitute an immediate hazard is a question of fact and not of law." (*Van Cise* v. *Lencioni, supra,* 346.)
The evidence was sufficient to support the finding of contributory negligence.

Appellants contend alternatively that respondent Rossi's testimony establishes that respondents were liable under the theory of last clear chance. "What constitutes a last clear chance depends on the circumstances, and is thus ordinarily an issue of fact, on which a finding by the jury is binding unless there is no substantial evidence to support it." (35 Cal.Jur.2d, Negligence, § 262, pp. 806-807.)
The evidence would support a finding that Rossi was entitled to assume that appellant intended to yield the right of way. It was for the trier of fact to decide whether Rossi was aware of the victims' dangerous position and whether he ought to have realized the inability to escape. There was evidence that when the truck was within 50 to 60 feet of the intersection, appellants' car was stopped and then "pulled out right in the path of the truck." If this evidence were accepted it would support a decision that respondent had no clear chance to avoid the accident.

Appellants contend that it was error to deny Karen Fields nominal damages and that her legal rights were jeopardized because this permitted costs to be assessed against her.

During the course of the trial appellants' counsel stated several times that Karen was not injured. At the close of plaintiffs' case their counsel stated "We will make a claim for nominal damages for her. . . ."

Appellants cite as authority for their contention Civil Code, section 3360, which provides: "When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."

It is fundamental that a negligent act is not actionable unless it results in injury to another (35 Cal.Jur.2d,

Negligence, § 52, p. 549, enunciating the complementary Latin reciprocals "injuria absque damno" and "damnum absque injuria," which properly interpreted mean that a wrong without damage does not constitute a cause of action for damages any more than damage without wrong does not ordinarily constitute a cause of action). ■ "Since the action for negligence developed chiefly out of the old form of action on the case, it retained the rule of that action, that proof of damage was an essential part of the plaintiff's case. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred." (Prosser on Torts, 2d ed., p. 165.)

■ Since testimony of appellant Opal Fields and statements of her counsel would support the finding that Karen suffered no compensable injury, it was not error to deny her damages.

■ Appellants contend that it was error to award respondents costs as against Opal and James Fields. They argue that since it was found that respondents were negligent and since Brenda Fields recovered $700 and respondent Napa Milling Company recovered nothing on its cross-complaint, appellants were in effect the prevailing parties and were entitled to costs under authority of Code of Civil Procedure, section 1032.

It has been held that defendants who defeat an action for damages by filing a claim against the plaintiffs for damages arising out of the same action are entitled to recover their costs, since they are the "prevailing party" under section 1032, subdivision b. (*Schrader* v. *Neville*, 34 Cal.2d 112 [207 P.2d 1057]; *Gerstein* v. *Smirl*, 70 Cal.App.2d 238, 241 [160 P.2d 585].) Whether viewed as a joinder of parties or a joinder of causes of action the instant case consisted of four separate causes of action. (Code Civ. Proc., §§ 378, 427.) Appellants could have brought separate actions. (*Colla* v. *Carmichael U-Drive Autos, Inc.*, 111 Cal.App. Supp. 784, 787 [294 P. 378]; *Edgar* v. *Citraro*, 112 Cal.App. 183, 186 [297 P. 653].) If the actions had been brought separately, they could have been consolidated for trial in the discretion of the trial court. (Code Civ. Proc., § 1048.)

While it would seem that there is no authority in California as to the effect of joinder on the allowance of costs, it has been stated that the consolidation of actions would not have the effect of depriving a plaintiff, in the event of a judgment in his favor, of the right to recover legal costs as to which his

right had accrued. (*Realty etc. Mtg. Co.* v. *Superior Court,* 165 Cal. 543 [132 P. 1048].) In that case a peremptory writ of mandate was sought to require the superior court to consolidate certain actions. The court stated that the question of clerk's fees ''to and including the entry of judgment'' appeared to be entirely immaterial in determining the question whether or not actions should be consolidated.

Authority in New York would indicate that costs could not be awarded to respondents.

''Under a statute authorizing joinder of plaintiffs generally, it is held that if one plaintiff recovers a bill of costs he recovers it for all plaintiffs. . . .

''Only one bill of costs can be granted where several successful plaintiffs join in bringing suit under a statute authorizing joinder of parties whose right to relief arises out of the same transaction. . . .'' (20 C.J.S. Costs, §§ 96, 97, p. 346, citing New York cases.)

In holding that only one award of costs could be made where there was a joinder of plaintiffs the New York court stated ''So far as costs are concerned, all plaintiffs and all defendants joined under section 209, Civil Practice Act, are one entity.'' (*Antonietti* v. *Pearson,* 153 Misc. 803 [276 N.Y.S. 52].) This section 209 corresponds with the California Code of Civil Procedure, section 378, providing for joinder of parties.

In *Colla* v. *Carmichael U-Drive Autos, Inc., supra,* the court stated, referring to section 378, ''In the complaint filed, each 'case' or cause of action preserved its identity and each plaintiff prayed for and obtained a segregated award based on the damages individually proved. The code section contemplates of course an action single in form, but with each 'case' or demand retaining its distinctive identity as though pleaded in an independent action. No plaintiff is interested in the entire complaint. The interest of each is in his own 'case' or cause of action; and the complaint as a whole is merely a series of 'cases' embodied in one document.''

Section 378 provides that ''. . . judgment may be given for such one or more of the plaintiffs as may be found to be entitled to relief, for the relief to which he or they may be entitled.'' It is settled that judgment may be given in favor of defendants who are not shown to be liable. (*Joerger* v. *Pacific Gas & Electric Co.,* 207 Cal. 8, 20 [276 P. 1017].)

If each party in the instant case had commenced a separate action, it would seem clear that respondents could have

recovered their costs against appellants. Since each cause of action retains its distinctive identity where there is a joinder and each plaintiff recovers or fails to recover on his separate demand, there would seem to be no authority, purpose, or reason to deny respondents costs against appellants who failed to establish their causes of action.

The judgment is affirmed.

Kaufman, P. J., and Draper, J., concurred.